No. 12,907.

DOWDEN v. THE STATE, FOR USE OF BULL, DRAINAGE
COMMISSIONER.

DRAINAGE.—*Action to Collect Assessment.—Jurisdiction.*—An action to col-
lect a drainage assessment levied under section 4273, *et seq.*, R. S. 1881,
as amended by the act of 1883 (Acts 1883, p. 173), must be brought in
the circuit court of the county in which the real estate assessed is sit-
uated, although the owner may reside in another county in which the
drainage proceeding was instituted. See section 307, R. S. 1881.

From the Greene Circuit Court.

*C. M. Wetzel*, for appellant.

*A. G. Cavins*, *E. H. C. Cavins* and *W. L. Cavins*, for ap-
pellee.

ZOLLARS, J.—Under section 4273, *et seq.*, R. S. 1881, as
amended by the act of 1883, Acts 1883, p. 173, a drain,
partly in Greene and partly in Knox counties, was located
and established by the Greene Circuit Court.

Two hundred and forty acres of appellant's lands, situated
in Knox county, and described in forty-acre tracts, were as-
sessed by the commissioners of drainage. At the proper time
the court made an order declaring the proposed work estab-
lished, and approving of the assessments, and appointed ap-
pellee, Bull, as the commissioner to construct the drain.

Under section 4 of the act of 1883, as such commissioner,
he assessed upon appellant's several tracts of land the amounts
assessed by the drainage commissioners, and required them to
be paid in ten equal monthly instalments. This action was
brought in the Greene Circuit Court to collect the amounts
so assessed. Appellant raised the question below, by demur-
rer to the complaint, and insists upon it here, that the Greene
Circuit Court did not have jurisdiction of the subject-matter;
that the action should have been brought in the Knox Cir-
cuit Court, in which county the lands are situated.

This question, we think, must be resolved in favor of ap-
pellant. The drainage act provided that the assessments

made by the drainage commissioners, and approved by the court, should be a lien upon the lands assessed. It further provided that " the commissioner charged with the construction of the work shall * * * make out a notice, wherein he shall state that the work has been established by the court, also the several assessments to the several tracts of land as the same have been finally confirmed by the court, and cause the same to be recorded in the office of the recorder of each county where any such lands may be situated." Acts 1883, p. 179, section 5.

It was this assessment which, under the above act, became a lien upon the lands. *Moss* v. *State, ex rel.,* 101 Ind. 321; *Cook* v. *State, etc.,* 101 Ind. 446.

Upon this assessment rested the assessments made by the commissioner charged with the construction of the work, and his assessments became enforceable liens simply because they rested upon the lien created by the assessments made by the drainage commissioners. In other words, in enforcing his assessments he so far enforced the liens created by the assessments made by the drainage commissioners.

Section 4 of the act of 1883 provided that the commissioner constructing the drain might collect the assessments in either of three ways:

*First.* He might distrain and sell personal property as such property is distrained and sold by county treasurers for the collection of taxes.

*Second.* He might make his certificates, showing the amount of such assessment against any tract or tracts of land, the default in its payment as required, and file the same with the auditor of the county where such lands were situated, and thereupon the auditor should place the same upon the succeeding tax duplicate, to be collected as State and county taxes are collected.

*Third.* He might bring suit in the name of the State, for his use as commissioner of drainage, in any court of com-

petent jurisdiction, to enforce the lien upon any tract or tracts of land for the amount so assessed by him, etc.

In this case appellee adopted the latter mode of collection. It will thus be seen, that if the first or second mode of collection, as above stated, were adopted, personal property might be distrained and sold, either by the commissioner or the county treasurer, and that no provision was made for the sale of personal property, if the third mode of collection were adopted.

In that case, the remedy was confined to the land. While it was necessary to make the owner of the land a defendant to the action, the action can not be said to be *in personam,* because a personal judgment could not be taken against him. The action is to enforce the lien simply, and is, therefore, properly speaking, an action *in rem.* Waples Proc. in Rem, section 616.

In the absence of statutes to the contrary, suits *in rem* are local, and the court within whose jurisdiction the thing is situated is the proper forum, although the parties in interest are not residents within that jurisdiction. 7 Wait Actions and Defences, p. 193.

The only *general* statute we have upon the subject of actions in relation to real estate is the following, section 307, R. S. 1881: "Actions for the following causes must be commenced in the county in which the subject of the action, or some part thereof, is situated: *First.* For the recovery of real property, or of an estate or interest therein, or for the determination in any form of such right or interest, and for injuries to real property. *Second.* For the partition of real property. *Third.* For the foreclosure of a mortgage of real property."

After making provisions, in subsequent sections, for other actions, not relating to real property, section 312 provides, that in all other cases the action shall be commenced in the county where the defendants or one of them have his or their usual place of residence. Under this statute, without refer-

ence to the drainage law, it was necessary to bring this action either in the county where the lands are situated, or in the county where appellant resided.

It was not brought in the county where the lands are situated, nor is it apparent from the complaint that it was or was not brought in the county where appellant resided. As errors, in order to be available here, must affirmatively appear in the record, we dispose of the case upon the theory that appellant was a resident of Greene county. The question then is, was it necessary, under the above statute and the drainage law of 1883, to bring the action in Knox county, where the lands are situated, notwithstanding the fact that appellant may have been a resident of Greene county?

The policy of the legislation in this State has uniformly been to locate actions in relation to real estate in the county where it is situated. That policy is a wise one. The records of deeds, mortgages and mechanic's liens, etc., are kept in the county where the land is situated. These records are practically necessary as furnishing a ready and safe means of information as to titles, and to protect purchasers. In keeping with the requirement as to deeds and mortgages, etc., the lien created under the drainage acts must be filed and recorded in the county where the land is situated. It is not only convenient, but, to be in harmony with the laws for the recording of titles, it is necessary that all actions affecting estates and interests in real estate shall be brought in the county where the real estate is situated, so that the record of the proceedings may also furnish information, and protect purchasers. As we have seen, the above statute provides that actions for partition, to foreclose mortgages, to recover real property, or an estate or interest therein, to determine, in any form, such right or interest, and for injuries to real estate, must be commenced in the county where the real estate is situated. This statute covers actions for quieting titles to real estate, and actions to set aside fraudulent conveyances, because they affect the title, and thus a right and interest in

the real estate. *New Albany, etc., R. R. Co.* v. *Huff,* 19 Ind. 444; *Vail* v. *Jones,* 31 Ind. 467. And so, actions to enforce mechanics' liens must be brought in the circuit court of the county where the work was done or materials furnished. R. S. 1881, section 5297. Actions to quiet title, under a tax deed, must be commenced in the circuit court of the county where the real estate is situated. R. S. 1881, section 6496. Actions to collect taxes, by enforcing the lien, must be commenced in the county where the real estate is situated. Section 6491.

If an action to enforce the lien created by the assessment made under the drainage law of 1883, may be brought in a county other than that in which the real estate is situated, the proceeding is out of line with the general policy of our legislation, and is the only instance that we now call to mind, where an action to enforce a statutory or other lien against real estate may be brought in a county other than that in which the real estate is situated. Strictly speaking, the lien created by an assessment made under the drainage law, may not be an estate or interest in the land. It is, however, clearly a charge upon the land, the action to enforce which may result in the sale of the land and a change of title. If this action is not within the letter, it is clearly within the spirit of the above section 307 of the statutes. See *State* v. *Canton,* 43 Mo. 48; *Middleton* v. *Greeson, ante,* p. 18, and cases there cited.

Section 4 of the drainage act, as we have seen, provided that the commissioner constructing the work might bring suit in any court of competent jurisdiction. It is patent that the Legislature did not intend by this section, that the action should be brought only in the court that may have established the drain, because it is not so declared. The case of *Shaw* v. *State, etc.,* 97 Ind. 23, cited by appellee, does not hold, or intimate, that such was the intention of the Legislature, nor that the statute should be so construed. There,

the drain, partly in Huntington and partly in Grant counties, had been established by the Huntington Circuit Court. The only discussion as to the authority of any court was as to the authority of the Huntington Circuit Court to establish the drain and confirm assessments made upon lands in Grant county. Nothing was said as to where the action to enforce the assessment lien should be brought. Such a question was not in the case. The action, however, was not brought in the court that established the drain, but in the Grant Circuit Court, in which county the land was situated.

It was not declared in the drainage act, as we have seen, that the action should be brought only in the court that may have established the drain ; neither was it there declared that the action should be brought in the county of the land-owner's residence. What, then, was meant by the provision that the action should be brought in any court of competent jurisdiction ? What court was regarded by the Legislature as the court of competent jurisdiction ? It should be presumed that the Legislature, in enacting this provision, had in mind the general policy of previous legislation, in providing that actions affecting real estate should be brought in the county in which the real estate was situated, and especially section 307 of the statutes, *supra.* The idea doubtless was, that the action provided for, being an action to enforce a lien upon real estate, came within the above statute, and that hence the court of competent jurisdiction would be the court of general jurisdiction in the county in which the real estate assessed might be situated.

After a careful examination of the question, we have reached the conclusion that the legislative intent was, that actions such as this should be brought in the circuit court of the county in which the real estate assessed is situated, and in none other. That intention, when ascertained, controls in the construction of the statute. *Middleton* v. *Greeson, supra.*

It results from this holding, that the court below erred in overruling the demurrer to the complaint. As this ruling

will necessitate a dismissal of the case below, it is not necessary for us to decide the other questions discussed by counsel.

The judgment is reversed, at appellee's costs, and the cause is remanded, with instructions to the court below to sustain the demurrer to the complaint.

Filed April 3, 1886.