409 P.2d 256

**D. Peter RASK, Petitioner,**

**v.**

**BOARD OF BAR EXAMINERS of the State
of New Mexico, Respondent.**

**No. 7883.**

Supreme Court of New Mexico.

Jan. 3, 1966.

Sutin & Jones, Albuquerque, for petitioner.

Marron & Houk, Albuquerque, for respondent.

CARMODY, Chief Justice.

Petitioner seeks the reversal of the decision of the Board of Bar Examiners, which denied his application for admission to practice law in New Mexico on motion.

It is contended that the respondent abused its discretion, or perhaps did not exercise it, when it refused to recommend that petitioner be admitted upon motion. In this connection, it is claimed that the respondent Board has changed its policy as to admission of out-of-state attorneys, in that, until recently, all applicants for admission on motion were approved, if they established to the satisfaction of the Board that they were of good moral character and had practiced law in the out-of-state jurisdiction for the necessary period. This latter claim is denied by the Board, as also does it deny any abuse of discretion.

In order to properly understand the situation, it is necessary to give a brief history of our present rule. Prior to January 15, 1949, the rule generally provided that out-of-state attorneys "may be admitted," provided they generally held themselves out as attorneys and actively practiced law for at least seven years prior to establishing residence in New Mexico, at least the last three years of which must have been in one jurisdiction. The rule also granted to the Board some discretionary power to recommend admission even though the applicant had practiced for a lesser time because of ill health, or other cause deemed sufficient in the opinion of the Board, provided the applicant was otherwise qualified. The old rule also specifically provided that the Board might require the applicant to demonstrate his qualifications by taking the bar examination. Some difficulty was experienced in this rule, and a new rule was adopted in 1949, which was subsequently amended in 1957. However, the amendment

has no bearing upon the instant case. The rule now in existence and the portion here at issue, which has been in effect for more than seventeen years, is Rule II A. 10., which appears in the pocket supplement to the New Mexico Statutes Annotated, 1953, following § 18–1–8, wherein the rules governing bar examiners, bar examinations and admissions to the Bar of the State of New Mexico appear. The applicable part of the rule is as follows:

> "10. The board of bar examiners, in exceptional circumstances, may, in its discretion, waive the taking of examination and move the admission on motion of any person regularly admitted to practice law in the highest court of any state or territory who has either (1) generally held himself out as an attorney and has actively and continuously practiced law for at least seven of the eight years immediately preceding the filing of his application, three years of which shall have been continuously in one jurisdiction, * * *."

The words "in exceptional circumstances" and "may, in its discretion," are the cause of the controversy.

In the minutes of the meeting of the Board on March 29, 1965, the following determination or decision with reference to the petitioner appears:

"No. 1840 D. Peter Rask. Applicant having applied for admission on motion and the Board having considered said application and all documents pertaining thereto filed with the Secretary of the Board; applicant having appeared for personal interview by the Board; and the Board being sufficiently advised, upon motion duly made, seconded and unanimously adopted, denies said application for admission on motion for the reason that applicant has presented no exceptional circumstances to warrant the Board of Bar Examiners, in its discretion, to waive the taking of the bar examination."

█ It thus appears that the Board has taken the position that the burden is on the applicant to present exceptional circumstances which would warrant the Board's exercising its discretion to waive the bar examination. This is as it should be, for, under the rules prior to 1949, questions were frequently raised as to whether the burden of proof of showing qualifications, moral character, and allied problems, was on the applicant or on the Board. We believe that this is the principal reason for the adoption of the rule above quoted. Be this as it may, it can be readily seen that the decision of the Board in this particular case does not give to the court any information as to what the Board considers to be exceptional circumstances, or what matters the Board considered in exercising its discretion. We take note of the fact that there is no place on the ap-

plication form for any applicant to give reasons which would constitute exceptional circumstances.[1] It is only in the interview that the question of the existence, or non-existence, of special circumstances arises. Unfortunately, the interviews are informal and apparently it is rarely felt that a transcript of what occurs should be taken. Therefore, there is no way to review what occurs.

On the record, it appears that the petitioner is thirty-five years of age, a graduate of the University of Minnesota Law School, and was admitted to the Minnesota Bar after having passed the bar examination in October of 1955; that between 1955 and 1964, he generally held himself out as an attorney in Minnesota and actively and continuously practiced law for nine years preceding his application to be admitted in New Mexico; that petitioner is a person of good moral character, and resigned his position as First Assistant City Attorney for the City of Duluth, in order to come to New Mexico because of illness in his family and to accept employment as an assistant city attorney in Albuquerque; and that the necessary residence in Albuquerque has been established.

We are thus squarely faced with the problem that was originally raised in Lanning v. State Board of Bar Examiners, 1963, 72 N.M. 332, 383 P.2d 578, but which, in that case, we did not discuss. In Lanning, the decision of the Board was based on three grounds, two of which were expressly determined by us, but the third (the exceptional-circumstances provision) was not ruled upon, although it might be argued that the court felt that the exceptional circumstances were so apparent that it determined to overrule any discretion which might have been exercised by the Board in this connection.

Strangely enough, it is not the language used in the rule that seems to cause the controversy, so much as the claim that the Board, as it is presently constituted, has adopted a new interpretation of the rule. It was asserted by petitioner that, until recently, the Board had, in all instances, recommended the admission on motion of out-of-state attorneys, unless they had not practiced for the required length of time, or some question was raised as to their moral character, or that there was some specified reason justifying the refusal to so recommend. Counsel for respondent denied this claim, and we have therefore determined that, in order to lay the matter at rest, a complete examination should be

1. Since this and its companion cases were filed, the Board has attempted to take care of the deficiency in the application form by enclosing, with all applications for admission on motion, a separate sheet, which bears the title of "State-ment of Exceptional Circumstances," and contemplates that the applicant set forth the facts and circumstances upon which he relies, which will permit the Board to waive the taking of the bar examination.

made of each denial for admission on motion since the adoption of the rule in 1949.

In this connection, we note that, over the years, there have been 142 applications for admission on motion. Of these, ninety-six have been recommended for admission and admitted. As to these, no information appears in the records to show what the Board considered other than length of practice and good moral character. The forty-six which were denied present a more illustrative picture. Until 1962 (which, incidentally, was the time of the denial of the Lanning application), there were relatively few applications which were denied, namely, twenty-nine out of ninety-two applicants. Of this group, the vast majority were denied for the stated reason of failure to meet the practice requirements, although a few were by reason of doubt as to moral character. In only two instances in this group was the reason given, "failure to present exceptional circumstances to warrant the waiving of the taking of the bar examination." Of incidental interest, one of the individuals proceeded to take the examination, passed it, and is now a member of the New Mexico Bar; the other, however, apparently accepted the decision without further action.

In 1962, commencing with the Lanning case, the Board frequently used the exceptional-circumstance provision as one of the grounds for refusal. However, in every instance that we have been able to find,

prior to the March 29, 1965, meeting, the Board did not rest its decision solely upon this provision, but gave additional reasons for its refusal. At the board meeting on that day, the examiners had before them some eleven applicants for admission on motion. All were denied. In six of the eleven cases, the Board's decision was in the exact words quoted above as to the petitioner. In four other cases, the exceptional-circumstances phrase was used, but other grounds were stated in addition. In only one of the eleven cases was the request for admission denied solely for lack of practice for seven out of the last eight years.

■ Thus it seems apparent that, as claimed by petitioner, the Board has changed its policy with respect to admissions on motion, and we do not believe it justified, in view of the long history of ruling otherwise. It seems hard to conceive of any situation where the applicant could anticipate what the Board might think were exceptional circumstances. We fully realize that the Board is attempting to do its very best, but, even though its members are appointed for staggered terms, it is unavoidable but that there will be a change in viewpoint as to what are considered exceptional circumstances, just as there will be a difference in attitude over how the discretion of the individual member shall be exercised. We do not desire to interfere with the honest legal discre-

tion exercised by the members of the Board, but, in this instance, we are inclined to the view that discretion was not exercised by them, or, if such discretion was exercised, that the Board failed to follow the almost uniform practice of their predecessors. This court recognizes, and so should the Board, that long administrative construction is highly persuasive and will not lightly be overturned. Valley Country Club, Inc. v. Mender, 1958, 64 N.M. 59, 323 P.2d 1099; State ex rel. Dickson v. Aldridge, 1960, 66 N.M. 390, 348 P.2d 1002. See also Temple Lodge No. 6, A.F. & A.M. v. Tierney, 1933, 37 N.M. 178, 20 P.2d 280.

The discretion contemplated under a rule such as we are considering has been variously defined not only by us but by other courts. See Pankey v. Hot Springs National Bank, 1938, 42 N.M. 674, 84 P.2d 649; Kiddy v. Board of County Com'rs of Eddy County, 1953, 57 N.M. 145, 255 P.2d 678; Ross v. State Racing Commission, 1958, 64 N.M. 478, 330 P.2d 701. See also Fox Film Corp. v. Trumbull, D.C.Conn.1925, 7 F.2d 715; Merritt School Dist. No. 50 v. Kimm, 1945, 22 Wash.2d 887, 157 P.2d 989. The most frequently cited definition seems to be that from Steamship Styria v. Morgan, 1902, 186 U.S. 1, 22 S.Ct. 731, 46 L.Ed. 1027, where the court said:

"The term *'discretion'* implies the absence of a hard-and-fast rule. The establishment of a clearly defined rule of action would be the end of *discretion,*

and yet discretion should not be a word for arbitrary will or inconsiderate action."

The difficulty with the instant rule is that when it uses both the terms "discretion" and "exceptional circumstances," it would seem to amount to a double type of discretion, i. e., discretion upon a discretionary matter. Absent some sort of guidelines, we are inclined to believe that the rule as phrased becomes almost an arbitrary power and cannot be reconciled under the due-process clause. See State ex rel. Sofeico v. Heffernan, 1936, 41 N.M. 219, 67 P.2d 240; and McCormick v. Board of Education etc., 1954, 58 N.M. 648, 274 P.2d 299. Compare Willner v. Committee on Character and Fitness, 1963, 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224; Cavalier County v. Gestson, 75 N.D. 657, 31 N.W. 2d 787, 2 A.L.R.3d 1254; and Application of Houston (Alaska 1963), 378 P.2d 644; and see Annotation, 2 A.L.R.3d 1266.

Although we decline to attempt to define what are exceptional circumstances in the sense used in the rule, we would say that certainly the term cannot be used to arbitrarily refuse to recommend the admission on motion, without the giving of underlying reasons. The term itself is simply too broad and defies precise, or even general, definition. We feel that the discretion given to the Board under exceptional circumstances was to enable the Board to aid in the preservation of the same high

standards that have always been insisted upon from a member of the bar, but not the right to refuse to recommend one 'who applies on motion, having practiced his profession in another jurisdiction for the period required by the rule and whose qualifications are equal to or better than many who have only recently graduated from law school. The examiners perform an indispensable, even though frequently thankless, task in considering applications for admission to the bar. We mean no criticism of them individually or collectively, but it must be remembered that it is the court which has the ultimate responsibility to grant or withhold the right of admission to practice law. Application of Sedillo, 1959, 66 N.M. 267, 347 P.2d 162. Compare Application of Courtney, 1957, 83 Ariz. 231, 319 P.2d 991. Rule I.1. of the rules governing bar examiners makes this plain, wherein it states, in part, that the Board is "charged with the duty of examining candidates for admission to the bar *as to their qualifications* and *to recommend* to the supreme court for admission such as fulfill the requirements." Thus the Board should and does have the discretion to determine whether or not an applicant meets the high standards of the New Mexico Bar. Of necessity, this does not mean merely a satisfaction of the active-practice provision, but also places the duty on the Board to determine if the applicant is qualified, legally, morally and ethically. For the Board to be permitted to consider other matters than those stated would be to allow each individual member to substitute his judgment for what he might think are "exceptional circumstances." Without any guidelines, a board might, for example, move the admission of a person who wished to come to New Mexico for personal health reasons, but deny the application for admission on motion of one who wished to move because of illness of a member of his family; or a well-known corporation lawyer might be admitted, whereas an equally prominent criminal lawyer might be denied. Matters of race, color or creed could possibly enter into the decision of the Board. Perhaps even worse might be the situation where the Board determined to deny all applicants for admission on motion because of an unstated attitude among the members that there were already enough lawyers in New Mexico and competition should be held to the minimum. In such an instance, the Board would be acting to control not just the quality of admittees but the quantity as well.

We have not overlooked the argument made on behalf of the Board, based upon Application of Sedillo, supra, to the effect that the court should not interfere, so long as the rule remains as written. True, there would be merit in such an argument, if the rule had been given uniform application; but it cannot apply where the Board has departed from its prior application of the rule and, of necessity, the

new approach must be subject to review, because if a different, unequal or oppressive result is reached, then the actions of the Board become arbitrary and erroneous and probably unconstitutional. See Yick Wo v. Hopkins, 1886, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220, which is widely cited for its discussion and analysis of the equal-protection clause. See also Henington v. State Board of Bar Examiners, 1956, 60 N.M. 393, 291 P.2d 1108; Hornsby v. Allen, 5th Cir. 1964, 326 F.2d 605 and 330 F.2d 55; and Melody Music, Inc. v. F. C. C. (1965), 120 U.S.App.D.C. 241, 345 F.2d 730.

We do not lightly overturn the judgment of the examiners, and would not do so except for what we feel is an injustice. Perhaps a revision of the rule is necessary; but, in any event, the examiners should be required to state, with some particularity, in what respect seemingly qualified out-of-state attorneys have failed in the burden of satisfying the requirements fixed by the Board. In order to meet the requirements of procedural due process, there must be a record and a confrontation of the applicant so as to show what considerations entered into the Board's decision.

We are fully cognizant that petitioner could, under the decision of the Board, take the regular written bar examination, but this hardly seems to be a practical solution for one who has been far removed from the classroom for many years; and, practical considerations aside, it would seem that such a requirement in all cases, in view of the past interpretation of the rule, should be by amendment to the rule, not by a change in its interpretation. We would emphasize, however, that no person applying for admission on motion has, under our rules, an absolute right to be admitted. He must satisfy this court that he is qualified in all respects so as to meet the high standards of the New Mexico Bar. In determining whether or not he should be admitted, this court, as it has in the instant case, will always give the most serious consideration to the recommendations of the Board, and will overrule them only when unalterably convinced that they are not well-founded.

We conclude that the action of the Board of Bar Examiners, in refusing to waive the taking of the examination by the petitioner, should be reversed, the Board's decision set aside, and petitioner's motion for admission granted. It is so ordered.

CHAVEZ, NOBLE, MOISE, and COMPTON, JJ., concur.