438 P.2d 157

Charles T. ROSS, Jr., Petitioner,

v.

STATE BOARD OF BAR EXAMINERS of the State of New Mexico, Respondent.

No. 8523.

Supreme Court of New Mexico.

March 4, 1968.

Rodey, Dickason, Sloan, Akin & Robb, Robert M. St. John, Albuquerque, for petitioner.

Charles M. Tansey, Farmington, W. E. Bondurant, Jr., Roswell, for respondent.

OPINION

COMPTON, Justice.

The petitioner seeks a review of the decision of the Board of Bar Examiners denying his application for admission to the New Mexico State Bar on motion.

The pertinent provision of Rule II(A)(10), § 18–1–8, N.M.S.A.1953, Pocket Supp. 1967, reads:

"The board of bar examiners, in exceptional circumstances, may, in its discretion, waive the taking of examination and move the admission on motion of any person regularly admitted to practice law in the highest court of any state or territory who has * * * *generally him himself out as an attorney and has actively and continuously practiced law* for at least seven of the eight years immediately preceding the filing of his application, * * *" (Emphasis ours.)

The facts are not controverted. Petitioner was duly licensed and admitted to the West Virginia Bar on September 17, 1946. He engaged in the general practice and became a partner in the firm of Ross & Ross, Beckley, West Virginia, from September 17, 1946 to November 1960. The partnership was dissolved in November 1960 by death of petitioner's father. Petitioner then moved to New York State on November 14, 1960 with the view of becoming a member of the bar of that state. He was immediately employed as an attorney of record by Western Electric Company, Inc., a New York Corporation, in defense of an antitrust suit involving claims of $600,000 pending in the United States District Court for the District of Minnesota. He was permitted to practice in the federal district court of Minnesota in this particular case on the basis of his West Virginia license and upon his statement that he intended to timely file his application for admission to the New York Bar. Assigned to assist him in this litigation were three other attorneys employed by Western Electric. His duties with Western Electric consisted of interviewing witnesses, taking depositions, arguing motions and general appearances in court in its behalf. He continued active full time participation in this litigation through March 1962. After waiting the required six months residency, petitioner, in June 1961, applied for admission to practice law in the State of New York and was admitted on motion to the Bar of the State of New York on June 20, 1962.

On May 1, 1966, petitioner was appointed general attorney, secretary and treasurer of Sandia Corporation, Sandia Base, Albuquerque, New Mexico, a wholly owned subsidiary of Western Electric. He then established legal residency in New Mexico and began the supervision of all legal activities of Sandia Corporation in New Mexico.

The reason given by the board for denying petitioner's application was that during the time he was working for Western Electric in New York, November 1960 to June 1962, when he was not a member of the bar of that state, he could not "generally hold himself out as an attorney and actively and continuously engage in the practice of the law" as to meet the requirement of the rule.

We do not characterize petitioner's activities during this period as does the board. We think that the rationale in Warren v. Board of Bar Examiners, 75 N.M. 627, 409 P.2d 263, and in Lanning v. State Board of Bar Examiners, 72 N.M. 332, 383 P.2d 578, dictates a conclusion contrary to that reached by the board. That petitioner was actively and continuously practicing law while engaged in handling the Minnesota litigation cannot be questioned. How else could his activities be described? That he "generally held himself out as an attorney" would seem to be no less clear. By his closing of his West Virginia office we do not understand that he forfeited or abandoned his license to practice law there. The fact that he was not present to serve

possible clients, or that he did not have an office or name on a door surely did not deprive him of his status as a member of the bar. He certainly would not deny his membership in that honorable body. Is a member of the bar who is incapacitated by sickness for a considerable period or who takes a year's trip around the world with no intention of abandoning the practice of law to be adjudged as not generally holding himself out as an attorney during that period? Certainly not. Does it matter that when practice is resumed after regaining his health or returning from his trip it is in a different state from the one in which he practiced before? Again, we say no. By what manner of reasoning then can it be said that petitioner, who left West Virginia, where he had been and continued to be a member of that bar, to enter practice elsewhere, when admitted, and who worked at his profession continuously during the period, was not generally holding himself out as an attorney, and was not actively and continuously practicing law? We are unalterably convinced that such conclusion is not well founded and cannot be supported. Rask v. Board of Bar Examiners, 75 N.M. 617, 409 P.2d 256.

The decision of the board will be set aside and petitioner's motion for admission will be granted.

It is so ordered.

CHAVEZ, C. J., and NOBLE and MOISE, JJ., concur.

WOOD, J., Court of Appeals, concurring specially.

WOOD, Judge, Court of Appeals (specially concurring).

My views are:

(1) The determination that Mr. Ross had not generally held himself out as an attorney for the required time has a sufficient foundation and therefore will not be set aside.

(2) The general holding out requirement will no longer be enforced and should by this opinion be deleted from the rule.

(3) Being eligible for admission after deletion of the requirement, I would at this time admit Mr. Ross under the inherent power of the court to do so.

*Interpretation of the Rule.*

The portion of the rule here involved provides that an applicant for admission on motion must have generally held himself out as an attorney for at least seven of the eight years immediately preceding the filing of the application. What does "generally" mean?

This court has not defined "generally" as used in the rule. The cases cited in the majority opinion did not involve the question of a general holding out. Warren, supra, and Lanning, supra, involved the question of active and continuous practice. Grogan v. State Board of Bar Examiners, 78 N.M. 603, 435 P.2d 433, was concerned with an attempt to impose requirements beyond those stated in the rules.

A workmen's compensation case, Romero v. H. A. Lott, Inc., 70 N.M. 40, 369 P.2d 777 (1962), used "generally" in the sense of "commonly" and used Webster's Third New International Dictionary in defining "general." According to that dictionary, "generally" means "on the whole," "in disregard of specific instances and with regard to an overall picture."

The Bar Examiners used this meaning, determined that Mr. Ross had not generally held himself out as an attorney between November 1960 and June 1962 and thus had not generally held himself out as an attorney for the requisite time period.

The facts support this determination. During the critical 18-month period:

(1) He was neither present nor practicing in West Virginia—he did not generally hold himself out there.

(2) He lived in New York, but his participation in the Minnesota litigation was "full time." Even if this "full time participation" took place in New York, he could not hold himself out generally in New York because he was not a member of the New York bar.

(3) He was attorney of record in the Minnesota case but his participation as attorney in that case was by a license for that case only. This did not constitute a general holding out in Minnesota.

On the basis of the meaning of "generally" and the facts, the Bar Examiners could determine that Mr. Ross had not generally held himself out as an attorney for the requisite time. On review, we are to uphold the determination of the Bar Examiners unless "unalterably convinced" the determination was not well founded. Rask v. Board of Bar Examiners, 75 N.M. 617, 409 P.2d 256 (1966). I am not unalterably convinced that the Bar Examiners' determination was not well founded. Thus, I would uphold their interpretation of the rule.

Petitioner suggests that the Examiners' determination was based on a philosophy of exclusion, of not recommending admission on motion. There are three answers to this: (1) Nothing in the record supports this assertion, (2) the record affirmatively shows the basis for the Examiners' determination and (3) the Examiners have the affirmative duty of examining applicants as to their qualifications and recommending for admission those that are qualified under the rule. Rule 13 of the rules governing the Board of Bar Commissioners (appearing in Annotation to § 18–1–6, N.M.S.A. 1953 (Supp.1967) and Rule I(1) of the rules governing admission to the bar (appearing in Annotation to § 18–1–8, N.M.S.A. 1953 (Supp.1967). In making a determination as to Mr. Ross' qualifications, they were carrying out this duty.

*A Changed Rule.*

The majority opinion infers that once one becomes a member of a bar somewhere, at sometime, that such a person is generally holding himself out as an attorney unless there is a showing of his intention to abandon the practice of law. The majority opinion holds that Mr. Ross was generally holding himself out as an attorney because he "worked at his profession continuously."

Since the general holding out requirement is established by active and continuous practice, does the general holding out requirement have a meaning apart from the active and continuous practice requirement? Under the facts of this case it does not.

Can facts be assumed where it would have an independent meaning? Consider a person who is the salaried attorney of his employer on a full time basis and whose full time is spent in office practice. Would the Examiners be justified in refusing to recommend his admission solely on the basis that he had not generally held himself out as an attorney? The answer is implicit in the majority opinion, and the Warren and Lanning decisions. The answer is No.

Such an answer accords with the purpose of the rules for admission stated in Rask, supra,—to preserve the high standards of the bar. To this end the inquiry is directed toward moral, ethical and legal qualifications. By legal qualifications I mean the active practice requirement, admission to the bar of another state or territory, etc.

Accordingly, I conclude that the general holding out requirement has no independent meaning, serves no purpose, and will not be enforced.

However, such a result is not explicitly stated; such a result changes the rule. Application of Sedillo, 66 N.M. 267, 347 P.2d 162 (1959), states that "the rules must stand or fall as written." Accordingly, I would hold that the general holding out phrase is no longer a requirement for admission on motion and that this phrase, by this decision, is deleted from the rule.

I would state this result explicitly to make this court's position on "general holding out" clear to applicants and to the Examiners. I would delete it from the rule for the same reason.

Apart from considerations of good administration, there is nothing to prevent amendment of the rules by a decision in a litigated case. The rules are rules approved by this court. Minutes of the Supreme Court for 1961, 89th day. By its decisions, the court has amended the rule involved here. In effect, Rask v. Board of Bar

Examiners, supra, removed the provisions relating to exceptional circumstances. The Rask and Grogan decisions indicate the Examiners have little if any discretion and that "may" now means "shall." Compare Application of Sedillo, supra. The Warren and Lanning decisions extend the meaning of active practice of law; Warren extends the concept of jurisdiction.

· Thus, by this decision I would change the rule.

· *Mr. Ross' Admission.*

Mr. Ross was not qualified for admission under the rules existing when he applied. Since the rule is changed, he is now qualified for admission and a future application would be successful. However, this court has inherent power to grant or withhold admission. Application of Sedillo, supra.

I would not require him to reapply, but would admit him at this time under this inherent power.